UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-61812-CIV-ALTONAGA/Simonton

**MARIO DIAZ**, *et al.*,

    Plaintiffs,
vs.

**AMERIJET INTERNATIONAL, INC.**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Plaintiffs' Motion for Partial Summary Judgment ("Plaintiff's Motion") [ECF No. 114], filed March 23, 2012. Plaintiffs filed a Complaint [ECF No. 1] on August 12, 2011 against Defendant, Amerijet International, Inc. ("Amerijet"), alleging one count for violations of Sections 2, Third and Fourth of 45 U.S.C. §§ 151, *et seq.* ("Railway Labor Act" or "RLA"), or "infringement on Plaintiffs' rights to engage in and to organize union activities and representation." (Compl. 2). The Court has previously denied Amerijet's motions to dismiss the Complaint on the basis of Federal Rule of Civil Procedure ("Federal Rule") 12(b)(6) (*see* Nov. 9, 2011 Order [ECF No. 32]) and Federal Rule 12(b)(1) (*see* Nov. 28, 2011 Order [ECF No. 37]). The Court further granted in part and denied in part Amerijet's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(h), Or, In the Alternative, Fully-Dispositive Motion for Summary Judgment ("Amerijet's Motion") [ECF No. 101]. (*See* May 24, 2012 Order [ECF No. 141]).

In the Motion, Plaintiffs now seek partial summary judgment as to liability, leaving only the issue of damages for the jury to determine at trial. Amerijet filed a Response [ECF No. 123]

on April 5, 2012. Plaintiff filed its Reply [ECF No. 127] on April 12, 2012. The Court has carefully considered the parties' submissions and the applicable law.

## I. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making its assessment of summary judgment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## II. BACKGROUND[1]

The Court set forth the undisputed factual background in its May 24, 2012 Order granting in part and denying in part Amerijet's Motion. The Court deems that factual background fully incorporated here and adds further facts only to the extent not discussed in that Order. The Court also does not discuss facts here filed under seal as per the Court's Order.[2] (*See* [ECF No. 110]).

Plaintiffs have submitted affidavits containing an account of their meeting with Alex Casillas ("Casillas"). Plaintiff Raul Molina ("Molina") stated, Casillas "indicated that if I refused to join the union then Amerijet, International, Inc. would raise my salary." (Statement of Undisputed Material Facts in Support of Pls.' Mot . . . ("SMF") [ECF No. 114-1] ¶ 25).[3] Other Plaintiffs have stated that Casillas told them, *inter alia*, that Amerijet would not negotiate with their union, Amerijet could terminate individuals and replace them right away if they joined the

---

[1] Unless otherwise noted, the facts are undisputed.

[2] The materials under seal are the subject of a motion in limine, which the Court will address in a separate order. The Court has not found the sealed materials necessary to decide the present Motion.

[3] Amerijet disputes this and some other facts on the basis of materiality, without objecting to the content. (*See* Amerijet's Statement of Facts Submitted in Opposition . . . ("SMFO") [ECF No. 122] ¶ 25). Where Amerijet makes this objection, without disputing the content of the fact, the Court considers it undisputed for the purposes of the Motion and addresses the materiality where necessary in the analysis section of this Order.

union, it could take three to five years to negotiate with the union if Amerijet chose, and workers would not receive raises or benefits if they joined the union. (*See id.*).

Amerijet only terminated the 34 individuals in the particular unit in which Plaintiffs worked, and not all Cargo Handlers employed by Amerijet, as Amerijet claimed the Wage Ordinance would only apply to those 34 Cargo Handlers. (*See id.* ¶ 31). Amerijet believed the Wage Ordinance would only apply to these 34 employees because they were performing third-party cargo handling services for BA. (*See id.* ¶ 32). In Amerijet's termination decision, no consideration was made regarding Plaintiffs' job performance or disciplinary reports. (*See id.* ¶ 34). To date, Amerijet has not received a final determination from the County as to whether it would be subject to the Wage Ordinance. (*See id.* ¶ 35).

Simpson met with 14 Amerijet employees on April 30, 2011, one day after they were fired. (*See id.* ¶ 43).

### III. ANALYSIS

Plaintiffs contend that summary judgment as to liability on their RLA claim is proper in this case. The legal standard governing Plaintiffs' RLA claim is briefly restated here. In order to make a *prima facie* case under the RLA pursuant to the applicable framework as set forth in *Wright Line, A Division of Wright Line, Inc.*, 251 N.L.R.B. 1083, 1083–88 (1980), an employee must show:

> (1) the employee engaged in union or other protected activities; (2) the employer knew of the employee's involvement in protected activities; (3) the employer harbored animus towards those activities; and (4) there was a causal connection between the employer's animus and its discharge decision.

*Carry Cos. of Ill., Inc. v. NLRB*, 30 F.3d 922, 927 (7th Cir. 1994) (citation omitted). If the employee succeeds in proving a *prima facie* case, "the burden shifts to the employer to

4

demonstrate by a preponderance of evidence that it based its discharge decision on unprotected conduct and that it would have fired the employee anyway." *Id.* (citations omitted).

Because there is a single cause of action at issue here, and Amerijet challenged every element of that cause of action in its own motion, the Court's May 24, 2012 Order is generally dispositive of the questions at issue in this Motion.

### 1. Whether Plaintiffs Engaged in RLA-Protected Activities

In the briefing on Plaintiffs' Motion, as was the case for Amerijet's Motion, Amerijet effectively concedes that Plaintiffs' signing of union authorization cards and meeting with the IBEW would constitute protected union activity. (*See* May 24, 2012 Order 14; Resp. 7). Amerijet however repeats the argument that such activity cannot be relevant for purposes of the RLA because a petition was first erroneously filed under the NLRA — an argument the Court rejected in the May 24, 2012 Order and finds equally unconvincing here. (*See* Resp. 3). Amerijet does raise the argument, not mentioned in the briefing on its own motion, that there may be a question of fact as to when three of the Plaintiffs — Jose Brizuela ("Brizuela"), Noe Martinez ("Martinez"), and Molina — signed their union authorization cards, and whether these Plaintiffs met with the IBEW. (*See id.* 5). Amerijet states that these Plaintiffs' affidavits do not establish when their cards were signed, or whether they met with the IBEW union. (*See id.*). Amerijet does not raise any such objections with respect to the remaining Plaintiffs.

Martinez's authorization card is not dated, and Brizuela's card is dated August 18, 1959, which may perhaps be his birthdate. (*See* Authorization Cards, SMF Ex. 2 [ECF No. 114-3]). However, Brizuela's affidavit states, "At the end of March, I received a union authorization card from Pedro Galindo. I signed the union authorization card and returned it to Pedro Galindo." (Affidavit of Jose Brizuela ("Brizuela Aff."), SMF Ex. 22 [ECF No. 114-20] ¶ 5). Martinez

avers, "Sometime in April 2011 before I was terminated, my coworker Pedro Galindo handed out International Brotherhood of Electrical Workers ('IBEW') union authorization cards at Amerijet, International, Inc. during breaks. I signed a union authorization card that Mr. Galindo gave to me and returned it to him to give to the union to confirm my intent to unionize." (Affidavit of Noe Martinez ("Martinez Aff."), SMF Ex. 12 [ECF No. 114-19] ¶ 4). Amerijet appears to attempt to manufacture an issue of fact out of Brizuela and Martinez's failure to link a date to the specific act of signing their cards, as opposed to the act of receiving the cards.

The Court finds that while this argument may be colorable from a grammatical standpoint, it does not create an issue of fact as to whether Martinez and Brizuela signed union cards prior to their termination. The import of the affidavits is clear that Brizuela signed his card in late March 2011, and Martinez signed his in April 2011 before his termination. The Plaintiffs have all asserted, and Amerijet does not dispute, that they signed their cards prior to their termination. (*See* May 24, 2012 Order 9). The Court finds, in light of the undisputed facts and documentary evidence, that there is no genuine dispute of fact as to whether Martinez and Brizuela signed their cards prior to their termination, and thus engaged in union activity pursuant to the RLA.

As to Molina, the Court fails to see any issue at all. Molina's card is dated March 22, 2011, within the relevant time frame. (*See* Authorization Cards). Molina states in his affidavit that he received his union card on March 22, 2011, and he signed and returned it to his coworker, Plaintiff Pedro Galindo ("Galindo"). (Affidavit of Raul Molina ("Molina Aff."), SMF Ex. 12 [ECF No. 114-10] ¶ 5). Amerijet has not shown any reason to create an issue of fact as to the date Molina signed his card.

The Court concludes that there is no genuine dispute of fact as to whether all Plaintiffs engaged in union activity, including the signing of authorization cards, prior to their termination. However, the Court finds disputed issues of fact as to the remaining elements of Plaintiffs' claim.

### 2. *Whether Amerijet Knew of Plaintiffs' Involvement in Protected Activities*

The Court stated in the May 24, 2012 Order that since it is beyond dispute Amerijet knew of the IBEW Petition filed with the NLRB, it is not difficult to infer that Amerijet knew some organizing activity had had to occur before the filing of the Petition. (*See* May 24, 2012 Order 14–15). The Court noted it is also undisputed that Amerijet did not know the specifics of the activity, *i.e.*, who if anyone had signed union cards or met with the IBEW. (*See id.*). Amerijet itself denies having any knowledge of authorization cards or meetings, and it denies having made the inference that Plaintiffs had been organizing themselves as relevant to the RLA. (*See* Resp. 7–8). Under the circumstances, the Court finds that the inference that Amerijet knew of Plaintiffs' organization activities is an inference for the fact-finder to make.

### 3. *Whether Amerijet Harbored Animus Toward Plaintiffs' Activities*

Plaintiffs state that Casillas, hired as a third party consultant, made statements to Plaintiffs during meetings that prove Amerijet's animus toward unions. (*See* Mot. 6). Amerijet stipulated solely for the purposes of its own Motion that it would not dispute Casillas's statements or its own animus toward Plaintiffs' activities. (*See* May 24, 2012 Order 15). However, Amerijet makes no such stipulation here.

In fact, Amerijet has repeatedly asserted that it inferred from the IBEW Petition that the document had been erroneously filed, but also *could not be re-filed* before the NMB on behalf of the same employees. (*See* Resp. 8). Amerijet Vice President of Human Resources Isis Suriá

("Suriá") states in her declaration that upon learning of the IBEW Petition to the NLRB, she thought it "could have reflected a perceived absence of adequate avenues for these employees to bring forward, internally at Amerijet, any concerns they might have." (Declaration of Vice ("Suriá Decl.") [ECF No. 122-1]). However, nowhere does Amerijet or its representatives acknowledge outright that unionization under the RLA seemed a viable threat inciting their animosity — rather, they state the opposite. Moreover, while Plaintiffs also point to statements by Casillas, which are in part the subject of a motion *in limine*, the Court notes without broaching the content of those statements that it is undisputed Casillas is a third party consultant, and that Amerijet has claimed it did not discuss union activities with him. (*See* May 24, 2012 Order 8). Thus, regardless of what Casillas said, whether his statements prove animus on the part of Amerijet is a question for the fact-finder. From all this, the Court finds a disputed issue of fact as to Amerijet's animus for the fact-finder to determine.

> 4. *Whether There was a Causal Connection Between Amerijet's Animus and its Discharge Decision and Whether Amerijet Would Have Terminated Plaintiffs Anyway*

Because there is an issue of fact as to Amerijet's animus, there is necessarily an issue of fact as to Amerijet's motivations in terminating Plaintiffs, an issue discussed at length in the May 24, 2012 Order.

> 5. *Whether Plaintiff Rafael Bello May Establish a* Prima Facie *Case*

Plaintiffs seek summary judgment as to Plaintiff Rafael Bello's ("Bello['s]") claims. The Court has explained why a highly disputed issue of fact exists as to whether Bello can make a *prima facie* RLA claim, and summary judgment is thus denied. (*See* May 24, 2012 Order 21).

Case No. 11-61812-CIV-ALTONAGA/Simonton

Amerijet states in its Response that it moves simultaneously under Rule 11 for sanctions arising out Bello's claims, which it calls "entirely frivolous." (Resp. 20). Needless to say, the Court denies this improperly filed motion as without merit.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment **[ECF No. 114]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of May, 2012.

*[signature]*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record